IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN COLE,<br><br>       Plaintiff,<br><br>v.<br><br>THE MEET GROUP, INC., GEOFFREY COOK, JEAN CLIFTON, CHRISTOPHER FRALIC, SPENCER RHODES, KEITH RICHMAN, BEDI SINGH, AND JASON WHITT,<br><br>       Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Martin Cole ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of The Meet Group, Inc. ("Meet Group" or the "Company") brings this action against the members of Meet Group's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to eHarmony Holding, Inc. ("Buyer") through Buyer's wholly-owned subsidiary, Holly Merger Sub, Inc. ("Merger Sub").

2. On March 5, 2020, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which the Company will be acquired by Buyer (the "Proposed Transaction"). Under the terms of the Merger Agreement, Meet Group

stockholders will receive $6.50 per share of Meet Group common stock (the "Merger Consideration").

3. On April 2, 2020, the Company filed a Preliminary Proxy Statement on Form PREM14A (the "Proxy") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the financial projections of Meet Group that were relied upon by the Board and Meet Group's financial advisor, BofA Securities, Inc. ("BofA") in recommending the Proposed Transaction background of the Proposed Transaction; (ii) the financial analyses conducted by BofA that supported its fairness opinion; and (iii) the confidentiality agreement entered into between Meet Group and another potential bidder during the process leading to the Merger Agreement.

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. The stockholder vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders

of Meet Group common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the Nasdaq Global Select Market within this District; and (ii) the Company's proxy solicitor, Okapi Partners LLC, is headquartered in this District at 1212 Avenue of the Americas, New York, New York 10036.

## PARTIES AND RELEVANT NON-PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of Meet Group common stock.

12. Defendant Meet Group is a Delaware corporation with principal executive offices at 100 Union Square Drive, New Hope, Pennsylvania 18938. Meet Group is a leading provider of interactive livestreaming solutions for dating and social software applications. Meet Group common stock is listed for trading on the NASDAQ Global Select Market under the ticker symbol "MEET."

13. Defendant Jean Clifton has served as a director of the Company since June 3, 2013.

14. Defendant Geoffrey Cook has served as CEO of the Company since March 11, 2013 and as a director since November 10, 2011.

15. Defendant Christopher Fralic has served as a director of the Company since February 2017.

16. Defendant Spencer Rhodes has served as Chairman of the Board since July 6, 2016 and as a director since April 24, 2013.

17. Defendant Keith Richman has served as a director of the Company since December 16, 2019.

18. Defendant Bedi Singh has served as a director of the Company since September 5, 2017

19. Defendant Jason Whitt has served as a director of the Company since August 4, 2014.

20. Defendants referenced in ¶¶ 13 through 19 are collectively referred to as Individual Defendants and/or the Board.

**FURTHER SUBSTANTIVE ALLEGATIONS**

21. On March 5, 2020, the Company issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> NEW HOPE, Pa.--(BUSINESS WIRE)--The Meet Group, Inc. (NASDAQ: MEET), a leading portfolio of mobile dating apps, today announced that it has entered into a definitive agreement to be acquired by ProSiebenSat.1`s and General Atlantic's joint company NuCom Group in an all cash transaction for $6.30 per fully diluted share representing an enterprise value of approximately $500 million. Together with NuCom Group's portfolio company Parship Group, a matchmaking platform with its brands Parship, Elite Partner and eharmony, The Meet Group will become an integral part of a global leader in the online dating and social entertainment sector.
>
> After careful and thorough review, and following consultation with The Meet Group's financial and legal advisors, the transaction was unanimously approved

by The Meet Group's board of directors. The purchase price represents a 30% and 43% premium to the unaffected 30 and 60 trading day volume weighted average price, respectively, to The Meet Group's common stock through December 13, 2019, the last trading day prior to published market speculation regarding a potential transaction involving the company.

"The Meet Group Board of Directors undertook a robust process, which culminated in a transaction that we believe will deliver certain and immediate value to our shareholders," said Spencer Rhodes, Chairman of The Meet Group Board of Directors. "We are excited about this transaction and the significant benefits resulting from a combination with Parship Group," said Geoff Cook, Chief Executive Officer of The Meet Group. "This transaction will allow us to tap new strategic growth opportunities by leveraging our video platform and ProSiebenSat.1's experience with content and entertainment. What's more, with this transaction and the participation of both General Atlantic and ProSiebenSat.1, we will achieve a new level of financial scale and backing, which has the potential to further accelerate our growth."

The Meet Group's freemium dating brands, featuring its industry-leading video platform technology, will be combined with NuCom's portfolio company Parship Group, which operates premium subscription dating brands including eharmony, Parship and Elite Partner. The transaction will diversify the revenue streams of both companies and increase their combined international footprint by broadening the companies' user base.

Max Conze, CEO, ProSiebenSat.1 Media SE: "The acquisition of The Meet Group is one of ProSiebenSat.1's largest transactions. It will significantly advance our ambition to create one of the leading global players in online dating and interactive live video. We believe the combination of these two successful and complementary businesses will also create synergies within the ProSiebenSat.1 universe and accelerate the growth of our market share in the German live video apps sector."

Tim Schiffers, CEO Parship Group: "Following a successful acquisition of eharmony, we have proven that we can manage new businesses and accelerate their growth by combining the best of both worlds. We continue to consolidate our position in the online dating market and extend our business model by adding social entertainment. I am looking forward to working with our new colleagues to solidify our international footprint."

The transaction, which is expected to close in the 2nd half of 2020, is subject to approval by The Meet Group's stockholders, along with the satisfaction of customary closing conditions and regulatory approvals, including the expiration or early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, antitrust approvals in Germany and Austria as well as approval from the Committee on Foreign Investment in

the United States. The Meet Group expects to hold a special meeting of its stockholders to consider and vote on the transaction as soon as feasible after the mailing of the proxy statement to shareholders.

The Meet Group plans to release its fourth quarter fiscal year 2019 results before market open on March 11, 2020. In light of the pending transaction announced today, the company will not hold a corresponding conference call.

**Representation**

BofA Securities is acting as financial advisor to The Meet Group, and Morgan, Lewis & Bockius LLP is acting as legal counsel.

**The Proxy Misleads Meet Group Stockholders by Omitting Material Information**

22. On April 2, 2020, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Meet Group's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the financial projections of the Company, the financial analyses conducted by BofA, and the terms of confidentiality agreements entered into with other potential bidders for the Company.

*The Company's Financial Projections*

23. The summary of the financial analyses conducted by the Company's financial advisor states that the advisor reviewed the financial projections created by Company management in preparing its financial analyses.

24. Thus, the cash flow projections that formed the basis for the financial advisors' discounted cash flow analyses were management's best estimates of the Company's future results, and did not originate from some other source.

25. These projections were prepared by Company management and provided to the Board in connection with their evaluation of the Proposed Transaction and the Board approved their use by BofA in connection with its financial analyses.

.

26. The disclosure of these projections in the Proxy is materially misleading because it discloses the line items used to calculate Adjusted EBITDA (net income (or loss) before interest expense, benefit from or provision for income taxes, depreciation and amortization expense, stock-based compensation expense, nonrecurring acquisition, restructuring or other expenses) but discloses only a few of these line items. The Proxy fails to disclose a) interest expense, b) stock-based compensation expense, c) non-recurring acquisition, and d) restructuring or other expenses.

27. The Proxy also fails to disclose a reconciliation of all non-GAAP financial metrics, including Adjusted EBITDA and Unlevered Free Cash Flows, to GAAP metrics.

28. The above-referenced omitted information relating to the Company's financial projections would, if disclosed, significantly alter the total mix of information available to Meet Group stockholders regarding the future value of the Company.

29. Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by BofA, or to perform their own valuation of the Company.

30. Defendants' failure to provide Meet Group stockholders with the foregoing material information renders the statements in the *Management Projections* section of the Proxy false and/or materially misleading.

*The Valuation Analyses and Fairness Opinions of Meet Group's Financial Advisor*

31. The Proxy describes the fairness opinion of BofA, Meet Group's financial advisor, and the various valuation analyses it performed in support of its opinion. However, the description of the fairness opinions and analyses of BofA fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Meet Group stockholders

are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA's fairness opinions in determining how to cast their vote on the whether or not to tender their shares in the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Meet Group stockholders.

32. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the assumed terminals multiples of 8.0x to 10.0x; (iii) the inputs and assumptions underlying the assumed perpetuity growth rates of 1.9% to 5.3%; (iv) the inputs and assumptions underlying the assumed discount rates ranging from 7.50% to 10.00%; and (v) the inputs and assumptions underlying the assumed effective tax rate of 21.0% and discount rates ranging from 7.00% to 9.00% used to calculate the implied per share present value of the tax benefits estimated to result from the net operating losses.

33. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy fails to disclose the individual multiples observed for each of the selected publicly traded companies.

34. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy omits the individual multiples observed for each of the selected precedent transactions.

35. Defendants' failure to provide Meet Group stockholders with the foregoing material information renders the statements in the *Opinion of The Meet Group's Financial Advisor* section of the Proxy false and/or materially misleading.

### The Terms of Confidentiality Agreements

31. The Proxy discloses that Meet Group entered into a confidentiality agreement with the private equity sponsor of a company that had expressed interest in acquiring Meet Group,

"Company B."

32.     But the Proxy does not disclose whether this confidentiality agreement permitted Company B's private equity sponsor to submit a public proposal to acquire the Company or whether it contained a standstill provision that would prevent a public proposal, or even a "don't-ask, don't-waive" standstill provisions that would prevent even a private overture.

33.      A "don't-ask, don't-waive" provision prevents a party from approaching the Company's Board privately to request a waiver of the standstill provision in order to submit a superior proposal. Through the use of these DADW provisions, a Board might willfully blind itself to superior offers.

34.     This omission is particularly notable because the Merger Agreement prohibits Meet Group from soliciting superior alternatives to the Proposed Transaction.  Thus, the Board has willfully blinded itself to a superior offer from Company B and its private equity sponsor if the confidentiality agreement contained such a standstill or DADW provision.

36.     Such information is material to Meet Group stockholders as a reasonable Meet Group stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

37.     Defendants' failure to provide Meet Group stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the Proxy false and/or materially misleading.

35.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Meet Group**

36.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Meet Group is liable as the issuer of these statements.

38.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

39.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

41.     The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Meet Group within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Meet Group and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  April 13, 2020

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
Email: denright@zlk.com
       etripodi@zlk.com

*Attorneys for Plaintiff*

Respectfully submitted,

By: /s/ *Adam M. Apton*
Adam M. Apton (AS8383)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4859
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff*